UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALARIE LYNN KENDRICK,

       Plaintiff,                         Civil Action No. 11-12678

v.                                            District Judge Thomas L. Ludington
                                           Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Valarie Lynn Kendrick[1] brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Doc.# 11] be GRANTED and that Plaintiff's Motion for Summary Judgment [Doc. #9] be DENIED.

---

[1] Plaintiff's first name is spelled either "Valerie" or "Valarie" intermittently throughout the transcript. She filed suit in this Court using "Valarie," but her summary judgment motion refers to her as "Valerie."

## **PROCEDURAL HISTORY**

On July 30, 2007, Plaintiff filed applications for DIB and SSI, alleging disability as of March 1, 2005 (Tr. 86, 89). Following the initial denial of the claim, she requested an administrative hearing, held on January 13, 2010 before Administrative Law Judge ("ALJ") Melvyn B. Kalt (Tr. 35). Plaintiff, represented by Barry Keller, testified (Tr. 38-49), as did Vocational Expert ("VE") Michael Rosko (Tr. 50-52). On May 21, 2010, ALJ Kalt found that although Plaintiff was unable to return to her past relevant work, she could perform a significant range of other work (Tr. 13-15). On April 19, 2011, the Appeals Council denied review (Tr. 1-4). Plaintiff filed suit in this Court on June 20, 2011.

## **BACKGROUND FACTS**

Plaintiff, born December 3, 1958, was 51 when the ALJ issued his decision (Tr. 15, 86). She completed high school and worked previously as an automotive assembler (Tr. 96, 99). Her application for benefits alleges disability as a result of depression, bipolar disorder, and anxiety (Tr. 95).

**A.     Plaintiff's Testimony**

Plaintiff testified that she currently lived in an apartment in Waterford, Michigan (Tr. 38). She denied problems taking care of her personal needs but noted that she required help with transportation issues (Tr. 38). She stated that she retired from General Motors as of May 1, 2006 but had been on sick leave "on and off" for the previous three years (Tr. 40). Plaintiff reported that she went on sick leave because she was being assigned work beyond her exertional level in retaliation for rebuffing the sexual advances of a supervisor (Tr. 40).

She testified that on February 1, 2010 (two weeks subsequent to the hearing) she would be entitled to a "full 30-year pension" (Tr. 42).

Plaintiff admitted that she obtained work at a local grocery store while on sick leave from General Motors but that she quit after three days because she experienced trouble concentrating and also because the position paid only seven dollars an hour (Tr. 43). She stated that she currently treated with a psychiatrist (Tr. 43). Plaintiff stated that both of her former husbands were abusive and that she began drinking heavily after her second divorce (Tr. 43-45). However, she reported that she quit drinking permanently in November, 2006 (Tr. 45). She stated that at present, she continued to attend Alcoholic Anonymous meetings (Tr. 45). She testified that she currently took Prozac, Klonopin and Ambien (Tr. 46). Plaintiff stated that she lacked both the desire and ability to work (Tr. 46).

The ALJ interjected that the transcripts of treating records from October, 2007 to June, 2009 by treating psychiatrist Dr. Singhal were unreadable (Tr. 48). Plaintiff's attorney responded that Dr. Singhal had not responded to requests to transcribe his treating notes (Tr. 49). The ALJ noted that he could (1) base the decision on the record apart from the unreadable notes (2) obtain a transcript of Dr. Singhal's notes or, (3) order a consultive examination (Tr. 49). The ALJ noted that Dr. Singhal's notes would be the "best evidence" (Tr. 50). The notes were subsequently transcribed. See fn. 3, *infra*.

    B.    **Medical Evidence**

### 1. Treating Sources[2]

In March, 2005, Plaintiff reported to a treating physician that she had been experiencing depression and anxiety for approximate one-and-a-half months (Tr. 232). She was prescribed Prozac (Tr. 232). May, 2005 counseling notes state that Plaintiff was drinking a six-pack of beer every day (Tr. 208). Her productivity and stream of mental activity was deemed normal with fair judgment (Tr. 206-207). Plaintiff denied being in abusive romantic relationships (Tr. 205). She was deemed able to relate well to others (Tr. 204). Plaintiff reported problems interacting with her teenaged children (Tr. 198). June, 2005 counseling notes note a diagnosis of depression but a good prognosis (Tr. 209). Plaintiff reported that she was buying a new house (Tr. 190). November, 2005 counseling notes state that Plaintiff continued to use alcohol but reported a "great improvement" in her ability to handle stress (Tr. 166). A December, 2005 chest x-ray was unremarkable (Tr. 276). February, 2006 imaging studies of the abdomen was likewise unremarkable (Tr. 274). March, 2006 counseling notes state that Plaintiff "refused" to continue to work because she was being assigned improper tasks (Tr. 147).

In December, 2006, Plaintiff resumed counseling after an eight-month gap during which time she reportedly was arrested for drunk driving and lost her house (Tr. 142). Plaintiff reported that she was upset that her teenaged daughter was pregnant (Tr. 142). May, 2007 counseling notes state that Plaintiff's driver's license had been suspended and that she

---

[2]Records pertaining to Plaintiff's condition prior to the alleged onset date of March 1, 2005 are included for background purposes only.

relied on her daughter for transportation (Tr. 136). She reported that she spent her time reading, watching television, caring for her granddaughter, and sitting by her apartment's pool (Tr. 136).

In August, 2007, Kris Mayo, Ph.D. reported that Plaintiff entered therapy for alcohol dependence in December, 2006 and successfully completed the program in May, 2007 (Tr. 278).

In October, 2007, Yatinder Singhal, M.D. observed that Plaintiff was anxious, depressed, and fearful, but did not experience suicidal ideations[3] (Tr. 310). The following month, Plaintiff reported that she was frustrated and angry, and had problems sleeping (Tr. 311). In February, 2008, Plaintiff reported panic attacks and moodiness (Tr. 314). Dr. Singhal continued her prescription for Prozac, Ambien, and Ativan (Tr. 314). May, 2008 treating notes state that Plaintiff felt better after attending an AA meeting (Tr. 317). In August, 2008, Dr. Singhal again noted that Plaintiff was irritable (Tr. 320). The following month, Dr. Singhal discontinued Prozac and prescribed Cymbalta (Tr. 321). In December, 2008, Dr. Singhal discontinued Cymbalta and restarted Prozac after Plaintiff reported no improvement from Cymbalta (Tr. 323). In March, 2009, Dr. Singhal prescribed Xanax for anxiety but discontinued it the following month after Plaintiff reported no improvement (Tr. 326-327). May, 2009 imaging studies of the hips and lumbosacral spine were unremarkable

---

[3] As requested by the ALJ, on February 7, 2010, Dr. Singhal provided transcribed copies of his treatment records created between October, 2007 and June, 2009 (Tr. 310-337).

(Tr. 290). In June, 2009, Plaintiff told Dr. Singhal that she was fearful that she was going to lose her job (Tr. 329). In October, 2009, Plaintiff reported improvement in symptoms of anxiety and depression (Tr. 334).

## 2. Non-Treating Sources

In September, 2007, Pamela M. Herringshaw, Ph.D. examined Plaintiff on behalf of the SSA (Tr. 279). Plaintiff reported "extreme mood swings" and anxiety while riding as a passenger in a car (Tr. 279). She stated that at times, she did not brush her teeth or shower for three days (Tr. 279). Plaintiff reported that she received a $50,000 judgment against her second husband for stalking her (Tr. 280). Dr. Herringshaw noted that Plaintiff cried throughout the interview (Tr. 281). Plaintiff reported that she babysat for her granddaughter three days a week and went out to eat and saw a hair stylist on a regular basis (Tr. 281). She stated that she had won a lawsuit against General Motors, and as such, would be receiving her full pay check until reaching retirement (Tr. 285). Dr. Herringshaw assigned Plaintiff a GAF of 50[4] (Tr. 285).

A Psychiatric Review Technique performed on October 1, 2007 by Thomas T. L. Tsai, M.D. found the presence of affective (depression) and substance addiction disorders[5] (Tr.

---

[4]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* )(4th ed.2000).

[5]The statement that Plaintiff had a personality disorder (Tr. 125) rather than a substance abuse disorder (Tr. 126) was apparently made in error.

118, 121, 125). Under the "'B' Criteria," Dr. Tsai found that Plaintiff experienced mild impairment in activities of daily living, but moderate limitations in social functioning and concentration, persistence, or pace (Tr. 128). A Mental Residual Functional Capacity Assessment, also completed by Dr. Tsai, found that Plaintiff was moderately limited in the ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; maintain regular attendance; accept criticism and instruction from supervisors; and respond appropriately to workplace changes (Tr. 132-133). Dr. Tsai concluded that Plaintiff could perform unskilled work (Tr. 134).

### C. Vocational Expert Testimony

VE Michael Rosco classified Plaintiff's prior work as an assembler as exertionally medium and unskilled [6] (Tr. 50). The VE testified that if Plaintiff's testimony were fully credited, she would be unable to return to her former job due to her inability to tolerate "working around people" (Tr. 50-51). The ALJ then posed a hypothetical question to the VE, taking into account Plaintiff age, education, and work experience:

> If I were to find that the claimant was capable of performing work at all

---

[6] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

> exertional levels as defined in the regulations, but that she could perform only unskilled work, work that did not require or affect the ability of others to do their job based on her output, and work that did not require interaction with the general public, could she return to her past work? (Tr. 50).

The VE testified the above-stated limitations did not prevent Plaintiff from performing the work of an assembler, packager, sorter, or simple machine tender, noting that 35,000 of such jobs at the medium exertional level, 35,000 light, and 5,000 sedentary existed in the regional economy (Tr. 51). He concluded by stating that his testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 52).

### D.     The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found the severe impairments of a major depressive disorder and alcohol dependence but that neither impairment met nor equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr. 11). He found that Plaintiff experienced moderate impairment in activities of daily living and social functioning, and moderate deficiencies in concentration, persistence, or pace (Tr. 11-12). ALJ Kalt found that Plaintiff retained the following residual functional capacity ("RFC"):

> [A] full range of work at all exertional levels but with the following nonexertional limitations: unskilled work, no work where others are dependent on the claimant, and no work requiring interaction with the general public (Tr.13).

Citing the VE's testimony, the ALJ found that although Plaintiff was unable to perform her past relevant work, she could perform a range of work in the occupations of assembler, sorter, and simple machine tender (Tr. 13-14). The ALJ supported his non-disability finding by noting that Plaintiff was able to babysit her granddaughter three days a week (Tr. 13). He

-8-

also observed that she had not been hospitalized for a mental impairment and that her alcoholism was in remission (Tr. 12).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any

also observed that she had not been hospitalized for a mental impairment and that her alcoholism was in remission (Tr. 12).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The ALJ's Analysis of the Medical Evidence

Plaintiff argues that the ALJ erred by adopting the non-examining findings of Dr. Tsai over Dr. Herringshaw's examining assessment. *Plaintiff's Brief,* 4-5 of 7, *Docket #9.* She also contends that Dr. Tsai's October, 2007 assessment did not have benefit of treatment records created by Dr. Singhal between October, 2007 and December, 2009. *Id.* at 5. Plaintiff appears to concede that substantial evidence supports the ALJ's finding that Plaintiff was not disabled between March 1, 2005 and September, 2007, but contends that the medical evidence supports an onset date of September 18, 2007. *Id.* at 6-7. She requests that this

Court amend the onset date to September 18, 2007 or remand the case to the administrative level for further fact-finding. *Id.* at 7.

None of these arguments provides a basis for remand. Plaintiff is correct that an examining medical source is generally entitled to more weight than a non-examining one. 20 C.F.R. § 404.1527(c)(1). Her contention, however, that ALJ adopted Dr. Tsai's assessment and ignored Dr. Herringshaw's is not supported by the record. To the contrary, the ALJ cited Dr. Herringshaw's conclusions in declining to adopt Dr. Tsai's finding of mild restrictions in daily living, finding instead that Plaintiff experienced *moderate* limitations (Tr. 11-12, 128, 279). The ALJ also cited Dr. Herringshaw's observations that Plaintiff was able to babysit three days a week, had a good memory, and could handle her own finances (Tr. 12, 281-285).

Plaintiff's related argument that a remand is mandated because Dr. Tsai did not have benefit of reviewing Dr. Singhal's treating records from October, 2007 forward is also unavailing. To be sure, the Sixth Circuit has affirmed an ALJ's rejection of "outdated" findings on the basis of newer, contradicting findings. *Hamblin v. Apfel*, 7 Fed.Appx. 449, 451, 2001 WL 345798, *2 (6th Cir. March 26, 2001)(unpublished); *See also Sayles v. Barnhart,* 2004 WL 3008739, *23 (N.D.Ill. December 27, 2004). Decisions stressing the importance of updated medical information would have increased relevance to cases such as the present, in which the more recent records were created by a treating source and the older findings were made by a state-hired physician.

*Hamblin* is nonetheless inapplicable here. Dr. Singhal's findings from October, 2007

forward, reviewed in detail by the undersigned, are not inconsistent with Dr. Tsai's findings. While Dr. Singhal's notes state that Plaintiff was irritable and anxious to varying degrees, at no time did he opine that she was incapable of substantial gainful activity or experienced greater limitations than those found by the ALJ.[7]  It bears repeating that the ALJ did not adopt Dr. Tsai's assessment altogether, but instead, found a moderate degree of impairment in activities of daily living.  While Plaintiff argues that Dr. Tsai's assessment should be discredited because he did not have benefit of later treating records, she does not cite any of the later records showing a greater degree of impairment than that found in the non-examining appraisal.  Significantly, neither Dr. Singhal nor any other of Plaintiff's treating sources opined that she was disabled.

### B.  The Hypothetical Question to the VE

The Court also requested supplemental briefing as to whether the hypothetical question to the Vocational Expert, limiting Plaintiff to "unskilled work . . . that did not require or affect the ability of others to do their job based on her output" adequately accounted for the ALJ's finding that Plaintiff experienced moderate deficiencies in concentration, persistence, or pace ("CPP").  *Docket #12* (citing Tr. 12, 50).

Defendant contends that these limitations were sufficient to account for moderate CPP limitations.  *Defendant's Supplemental Brief,* 2, *Docket #13* (citing *Lewicki v. Commissioner of Social Security*, 2010 WL 3905375, *2 (E.D. Mich. Sept. 30, 2010)(the

---

[7] Moreover, Dr. Singhal's June, 2009 treating notes could be interpreted to state that Plaintiff had obtained other employment after the alleged onset of disability (Tr. 329)

modifiers of "simple routine work" adequately accounted for Plaintiff's moderate deficiencies in CPP)). Plaintiff's entire supplemental argument regarding the hypothetical question reads as follows:

> Specifically, the ALJ found that the Plaintiff experienced moderate deficiencies in concentration, persistence and pace, (Tr.13) and failed to incorporate these mental restrictions into the hypothetical question to the Vocational Expert (see Teal v. Commissioner of Social Security, 2011 US Dist. Lexis 109844- attached).[8]

*Plaintiff's Supplemental Brief* at 3.

Moderate deficiencies in CPP suggest substantial limitations which must be acknowledged in the hypothetical question. *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich.2005) (Friedman, J.). The failure to account for moderate deficiencies in CPP in the hypothetical question constitutes reversible error. "[U]nskilled work," or "simple work" may be insufficient to account for moderate deficiencies in CPP. *Id.*; *See also Ealy v. Commissioner,* 594 F.3d 504 (6th Cir. 2010).

In the present case, the ALJ's choice of hypothetical limitations sufficiently addressed Plaintiff's concentrational limitations as found in the record. In *Teal,* cited but not discussed by Plaintiff, the Court determined that the ALJ's failure to address the claimant's pacing deficiencies mandated remand. In contrast here, the ALJ accounted for possible pacing deficiencies by limiting Plaintiff to work non-production line work, *i.e.*, work "that did not

---

[8]Plaintiff did not attach *Teal* or any other case to the supplemental brief.

require or affect the ability of others to do their job based on her output"[9] (Tr. 50). This case is more closely analogous to *Lewicki, supra,* in which the record as a whole did not require greater limitations than "simple routine work"despite moderate impairments in CPP. *Id.* at *2; *see also Chafin v. Commissioner of Social Sec.*, WL 994577, *2-4 (E.D.Mich. April 26, 2005)("simple, unskilled" work sufficient to account to moderate concentrational deficiencies). Further, neither *Edwards, supra* nor its progeny has held that the terms "simple, routine, unskilled work" are *always* insufficient to describe such limitations. Instead, the court in *Edwards* found that these terms "[w]hile close," did not "fully convey" the claimant's concentrational problems. *Id,* at 930.

Plaintiff's case for remand is also undermined by a transcript that overwhelmingly supports the ALJ's choice of hypothetical limitations and the ultimate non-disability finding. Plaintiff testified that she stopped working because she was harassed at work and unfairly asked to perform jobs beyond her physical abilities. She did not claim that she was unable to keep up with the mental demands of her former work as an assembler, but instead, that she felt overwhelmed by her supervisor's harassment. She admitted that she sought work after her alleged onset of disability and admitted that she quit a job, at least in part, because the position paid only seven dollars an hour (Tr. 43). Plaintiff's psychological problems also appear to have been precipitated in great part by alcoholism and its legal consequences (Tr.

---

[9]

Moreover, the ALJ, quoting the regulatory language in finding moderate limitations in concentration, persistence, *or* pace, did not specifically find that Plaintiff experienced pacing problems, but rather concentrational limitations (Tr. 12).

43-45). However, she acknowledged that her alcoholism had been in remission for over three years at the time of the hearing and that she was able to provide childcare services for her granddaughter several days each week (Tr. 45, 281). Plaintiff opined that she would be unable to work because she did not "like people anymore," but admitted that she socialized at least once a week with non-family members (Tr. 46).

My recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's personal difficulties. However, because the ALJ's decision was well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Doc. #11] be GRANTED and that Plaintiff's Motion for Summary Judgment [Doc. #9] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                    s/ R. Steven Whalen
                                                    R. STEVEN WHALEN
                                                    UNITED STATES MAGISTRATE JUDGE

Date: November 27, 2012

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on November 27, 2012.

                                                      s/Johnetta M. Curry-Williams
                                                      Case Manager